IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| LAUREN TERKEL; PINEYWOODS ARCADIA HOME TEAM, LTD; LUFKIN CREEKSIDE APARTMENTS, LTD; LUFKIN CREEKSIDE APARTMENTS II, LTD; LAKERIDGE APARTMENTS, LTD; WEATHERFORD MEADOW VISTA APARTMENTS, LP; and MACDONALD PROPERTY MANAGEMENT, LLC;<br><br>*Plaintiffs*,<br><br>v.<br><br>CENTERS FOR DISEASE CONTROL AND PREVENTION; ROBERT R. REDFIELD, in his official capacity as Director of the Centers for Disease Control and Prevention; NINA WITKOFSKY, in her official capacity as Acting Chief of Staff for the Centers for Disease Control and Prevention; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; and ALEX AZAR, in his official capacity as Secretary of the Department of Health and Human Services;<br><br>*Defendants*. | CIVIL ACTION NO. _____<br><br>JUDGE _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Lauren Terkel, Pineywoods Arcadia Home Team, Ltd. ("Pineywoods"), Lufkin Creekside Apartments, Ltd. ("Creekside"), Lufkin Creekside Apartments II, Ltd. ("Creekside II"), Lakeridge Apartments, Ltd. ("Lakeridge"), Weatherford Meadow Vista Apartments, LP ("Weatherford"), and MacDonald Property Management, LLC ("MacDonald") (collectively, the "Plaintiffs") seek relief

from this Court against Defendants Centers for Disease Control and Prevention (the "CDC"), Robert R. Redfield (in his official capacity as Director of the CDC), Nina Witkofsky (in her official capacity as Acting Chief of Staff for the CDC), United States Department of Health and Human Services ("HHS"), and Alex Azar (in his official capacity as Secretary of HHS) (collectively, the "Defendants"). Plaintiffs are challenging the constitutionality of Defendants' emergency agency order imposing a temporary moratorium on residential evictions (the "Eviction Moratorium Order"),[1] and in support would show the Court as follows:

## EXECUTIVE SUMMARY

When Plaintiffs expended substantial financial resources in order to build and maintain residential rental properties, they did so with the reasonable expectation that they would be legally permitted to realize the benefit of their bargain by collecting monthly rent from their tenants. Plaintiffs also expected to have legal recourse if those tenants breached the terms of their lease by failing to pay their rent. Specifically, by following the standard procedures laid out by Texas state law for evicting a tenant, Plaintiffs would be able to replace tenants that failed to pay their rent with others that would fulfill their obligations in exchange for occupying the property. Plaintiffs' tenants have now breached their rental agreements by failing to pay the agreed upon rent, and under normal circumstances would be immediately subject to eviction proceedings under state law.

---

[1] *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55292 (Sept. 4, 2020), *available at* https://www.govinfo.gov/content/pkg/FR-2020-09-04/pdf/2020-19654.pdf.

However, following the CDC's emergency issuance of a nationwide Eviction Moratorium Order, Plaintiffs have been denied the benefit of their bargain by a federal agency on the pretext that exercising their well-established property rights will contribute to the spread of COVID-19. This occurred despite the structural limitations inherent in our constitutional design, whereby the executive branch of the United States government may only act either pursuant to its own inherent executive power or to enforcement of a law duly enacted by Congress. Indeed, neither fount of power is sufficient to support the CDC's unprecedented order here.

The power to suspend the terms of a rental agreement between private parties, interfere with state legal proceedings, or prevent private property owners from removing unlawfully present persons from their property has never been considered inherent in "[t]he executive Power" referenced in Article II of the United States Constitution. Thus, the Eviction Moratorium Order's validity must necessarily be predicated on the CDC enforcing one of the powers enumerated in Article I, Section 8. However, even if Congress itself had passed a law attempting to impose a nationwide moratorium on the eviction of residential tenants, such measures would reach far beyond the legitimate scope of federal power. Such a moratorium could not be supported under the Commerce Clause, Necessary and Proper Clause, or any other enumerated power. And if Congress itself lacks the constitutional power to intrude upon the States' traditional police power, Defendants' attempt to impose such measures must also fail.

Because Defendants have clearly transgressed well established constitutional constraints, Plaintiffs file this suit seeking a declaration that the Eviction Moratorium Order is unconstitutional because it both exceeds the limited powers of the federal government and violates the Administrative Procedure Act. For the same reasons, Plaintiffs also seek an injunction against the Order's enforcement.

## PARTIES

1. Plaintiff Lauren Terkel is individual that owns one 4-unit rental property in Tyler, Texas.

2. Plaintiff Pineywoods is a Texas limited partnership that owns a 26-unit apartment complex in Center, Texas. PAHT, Inc. is the general partner of the partnership.

3. Plaintiff Creekside is a Texas limited partnership that owns a 72-unit apartment complex in Lufkin, Texas. First MT Development is the general partner of the partnership.

4. Plaintiff Creekside II is a Texas limited partnership that owns a 60-unit apartment complex in Lufkin, Texas. PED-Creekside, LLC is the general partner of the partnership.

5. Plaintiff Lakeridge is a Texas limited partnership that owns a 112-unit apartment complex in Texarkana, Texas. Shannock Two, LLC, is the general partner of the limited partnership.

6. Plaintiff Weatherford is a Texas limited partnership that owns an 80-unit apartment complex in Weatherford, Texas. Weatherford Meadow Vista GP, LLC

is its general partner.

7. Plaintiff MacDonald is a Texas limited liability company that manages rental properties across the state of Texas.

8. Defendant CDC is an agency of the United States located within HHS.

9. Defendant Robert R. Redfield is the Director of the CDC and, pursuant to 42 CFR 70.2, is charged with determining whether measures taken by a State's health authorities are insufficient to prevent the interstate spread of communicable diseases. He is sued in his official capacity.

10. Defendant Nina Witkofsky is the Acting Chief of Staff for the CDC and is responsible for the challenged agency action taken pursuant to the Eviction Moratorium Order. She is sued in her official capacity.

11. Defendant HHS is an agency of the United States.

12. Defendant Alex Azar is the agency head of HHS and is sued in his official capacity.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the United States Constitution; 28 U.S.C. § 1346(a)(2) because this suit constitutes a civil action against an executive department of the United States; and 5 U.S.C. §§ 702 and 706 (providing for judicial review of agency action) because this matter involves questions arising under the Administrative Procedure Act.

14. This Court has the authority to grant declaratory relief under 28 U.S.C.

§ 2201 and preliminary and permanent injunctive relief under 28 U.S.C. § 2202.

15. Venue is proper within this judicial district and division pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions asserted by Plaintiffs arose within this judicial district. Venue is proper in the Tyler Division of the Eastern District of Texas pursuant to 28 U.S.C. § 124(c)(1).

## FACTS

### A. *The Eviction Moratorium Order*

16. On September 1, 2020, Defendant Acting Chief of Staff Witkofsky issued the Eviction Moratorium Order. The Order became effective on September 4, 2020, upon its publication in the Federal Register, and remains in effect until December 31, 2020, "unless extended." 85 Fed. Reg. 55292 (Sept. 4, 2020).

17. The Eviction Moratorium Order prohibits any "landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action" from evicting "any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." *Id.*

18. The Eviction Moratorium Order defines "evict" or "eviction" as "any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a covered person from a residential property." *Id.*

19. The Eviction Moratorium Order defines a "covered person" as "any tenant, lessee, or resident of a residential property who provides . . . a declaration

under penalty of perjury" that the individual meets the five qualifications listed within the Order. Those qualifications are as follows:

> (1) The individual has used best efforts to obtain all available government assistance for rent or housing;
>
> (2) The individual either (i) expects to earn no more than $99,000 in annual income for Calendar Year 2020 (or no more than $198,000 if filing a joint tax return), (ii) was not required to report any income in 2019 to the U.S. Internal Revenue Service, or (iii) received an Economic Impact Payment (stimulus check) pursuant to Section 2201 of the CARES Act;
>
> (3) the individual is unable to pay the full rent or make a full housing payment due to substantial loss of household income, loss of compensable hours of work or wages, a lay-off, or extraordinary out-of-pocket medical expenses;
>
> (4) the individual is using best efforts to make timely partial payments that are as close to the full payment as the individual's circumstances may permit, taking into account other nondiscretionary expenses; and
>
> (5) eviction would likely render the individual homeless—or force the individual to move into and live in close quarters in a new congregate or shared living setting—because the individual has no other available housing options.

*Id.*

20. The stated objective of the Eviction Moratorium Order is "mitigating the further spread of COVID-19 from one U.S. State or U.S. territory into any other U.S. State or U.S. territory." *Id.*

21. In particular, the Order claims that because some individuals who are evicted from their homes may move to another state, "mass evictions would likely increase the interstate spread of COVID-19." *Id.*

22. However, the order provides no findings linking the interstate spread of COVID-19 to evictions.

23. Moreover, the Order's prohibition on evictions is not limited to individuals who have been infected or have been exposed to COVID-19.

24. And there is no current prohibition on individuals who have been infected or have been exposed to COVID-19 moving between states.

25. An individual that violates the Eviction Moratorium Order "may be subject to a fine of no more than $100,000 if the violation does not result in a death or one year in jail, or both, or a fine of no more than $250,000 if the violation results in a death or one year in jail, or both, or as otherwise provided by law." 85 Fed. Reg. 55292 (Sept. 4, 2020).

26. An organization that violates the Eviction Moratorium Order "may be subject to a fine of no more than $200,000 per event if the violation does not result in a death or $500,000 per event if the violation results in a death or as otherwise provided by law." 85 Fed. Reg. 55292 (Sept. 4, 2020).

**B.** *Plaintiffs' Standing*

27. Plaintiff Lauren Terkel owns a 4-unit rental property located at (the "Tyler Property").

28. One tenant is two months' delinquent on rent to Ms. Terkel, with a past due amount being approximately $1,700.

29. Ms. Terkel's monthly expenses for upkeep of the Tyler Property are approximately $1,190.

30. Ms. Terkel has maintained the Tyler Property in compliance with all legal obligations as landlord and the tenant that owes past due rent possess no other

defense for nonpayment.

31. Under Texas law, Ms. Terkel would be entitled to pursue legal redress against the tenant that owes past due rent, which could eventually result in the execution of writ of possession.

32. Plaintiff Pineywoods owns a 26-unit multi-family property located at 673 Arcadia Rd., Center, Texas 75935 (the "Pineywoods Property").

33. Pineywoods has a mortgage on the Pineywoods Property and makes monthly payments of approximately $3,745 for the mortgage principal and interest.

34. One tenant is delinquent on rent to Pineywoods at least one month, with the past due amount owed being approximately $616.

35. Pineywoods has maintained the Pineywoods Property in compliance with all legal obligations as landlord and the tenant that owes past due rent possess no other defense for nonpayment.

36. Under Texas law, Pineywoods would be entitled to pursue legal redress against the tenant that owes past due rent, which could eventually result in the execution of writ of possession.

37. Plaintiff Creekside owns a 72-unit multi-family property located at 1825 Sayers St., Lufkin, Texas 75904 (the "Creekside Property").

38. Creekside has a mortgage on the Creekside Property and makes monthly payments of approximately $20,550 for the mortgage principal and interest.

39. Six tenants are delinquent on rent to Creekside at least one month, with the total past due amount owed being approximately $6,671.

40. One of the tenants that is delinquent on rent to Creekside ("Creekside Tenant 1") is six months behind and owes approximately $3,485 in back rent.

41. Creekside Tenant 1 has declared to Creekside that the individual has used best efforts to obtain government assistance, is making less than $99,000 individually or $198,000 jointly, is unable to pay rent, and would be rendered homeless by an eviction.

42. Creekside filed for a writ of possession against Creekside Tenant 1 but received the tenant's declaration on the same day.

43. One of the tenants that is delinquent on rent to Creekside ("Creekside Tenant 2") is two months behind and owes approximately $1,064 in back rent.

44. Creekside Tenant 2 has declared to Creekside that the individual has used best efforts to obtain government assistance, is making less than $99,000 individually or $198,000 jointly, is unable to pay rent, and would be rendered homeless by an eviction.

45. Creekside issued Creekside Tenant 2 a 30-day notice to vacate prior to receiving the tenant's declaration.

46. Creekside has maintained the Creekside Property in compliance with all legal obligations as landlord and the tenants that owe past due rent possess no other defense for nonpayment.

47. Under Texas law, Creekside would be entitled to pursue legal redress against the tenants that owe past due rent, which could eventually result in the execution of writs of possession.

48. Plaintiff Creekside II owns a 60-unit multi-family property located at 1825 Sayers St., Lufkin, Texas 75904 (the "Creekside II Property").

49. Creekside II has a mortgage on the Creekside II Property and makes monthly payments of approximately $13,352 for the mortgage principal and interest.

50. Six tenants are delinquent on rent to Creekside II at least one month, with the total past due amount owed being approximately $7,017.

51. One of the tenants that is delinquent on rent to Creekside II ("Creekside II Tenant 1") is five months behind and owes approximately $3,611 in back rent.

52. Creekside II Tenant 1 has declared to Creekside II that the individual has used best efforts to obtain government assistance, is making less than $99,000 individually or $198,000 jointly, is unable to pay rent, and would be rendered homeless by an eviction.

53. Creekside II filed for a writ of possession against Creekside II Tenant 1 but received the tenant's declaration on the same day.

54. One of the tenants that is delinquent on rent to Creekside II ("Creekside II Tenant 2") is two months behind and owes approximately $1,132 in back rent.

55. Creekside II has issued Creekside II Tenant 2 a 30-day notice to vacate.

56. Creekside II has maintained the Creekside II Property in compliance with all legal obligations as landlord and the tenants that owe past due rent possess no other defense for nonpayment.

57. Under Texas law, Creekside II would be entitled to pursue legal redress against the tenants that owe past due rent, which could eventually result in the

11

execution of writs of possession.

58. Plaintiff Lakeridge owns a 112-unit multi-family property located at 3708 S. Lake Dr., Texarkana, Texas 75501 (the "Lakeridge Property").

59. Lakeridge has a mortgage on the Lakeridge Property and makes monthly payments of approximately $34,944 for the mortgage principal and interest.

60. Two tenants are delinquent on rent to Lakeridge at least one month, with the total past due amount owed being approximately $1,357.

61. Lakeridge has issued both the tenants that are delinquent on their rent a 30-day notice to vacate.

62. Lakeridge has maintained the Lakeridge Property in compliance with all legal obligations as landlord and the tenants that owe past due rent possess no other defense for nonpayment.

63. Under Texas law, Lakeridge would be entitled to pursue legal redress against the tenants that owe past due rent, which could eventually result in the execution of writs of possession.

64. Plaintiff Weatherford owns an 80-unit multi-family property located at 525 Meadow Vista Circle, Weatherford, Texas 76087 (the "Weatherford Property").

65. Weatherford has a mortgage on the Weatherford Property and makes monthly payments of approximately $10,063 for the mortgage principal and interest.

66. Weatherford has maintained the Weatherford Property in compliance with all legal obligations as landlord.

67. Under Texas law, Weatherford would be entitled to pursue legal redress

against the tenant that owes past due rent, which could eventually result in the execution of writ of possession.

68. Plaintiff MacDonald manages 41 rental properties across the state of Texas, many of which have tenants that are delinquent on their rent but have submitted declarations that appear to substantially conform to those described in the Eviction Moratorium Order.

69. Plaintiff MacDonald's income is primarily based upon receiving a percentage of the revenue from each property that it manages and the reduction in rent collected has thus resulted in reduced income.

## COUNT I
## THE EVICTION MORATORIUM ORDER EXCEEDS THE LIMITATIONS OF ARTICLE I, SECTION 8 OF THE UNITED STATES CONSTITUTION

70. Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

71. It is axiomatic that "[t]he Constitution creates a Federal Government of enumerated powers." *United States v. Lopez*, 514 U.S. 549, 552 (1995).

72. Any "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

73. There are seventeen specific powers enumerated in Article I, Section 8 of the Constitution, along with the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any

Department or Officer thereof." U.S. Const. art. I, sec. 8.

74. The power to modify leasing agreements between landlords and tenants is neither explicitly nor implicitly among the federal government's enumerated powers, *see* U.S. Const. art. I, sec. 8, nor is it inherent in "[t]he executive Power" referenced in Article II of the United States Constitution.

75. The CDC has traditionally claimed authority to stem the spread of disease under the Commerce Clause.

76. The Commerce Clause grants Congress authority "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, sec. 8, cl. 3.

77. The Necessary and Proper Clause grants Congress authority to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

78. But the Eviction Moratorium Order cannot be justified under the Commerce Clause, even when supplemented by the Necessary and Proper Clause.

79. The commerce power generally falls within three broad categories: 1) regulation of the channels of interstate commerce; 2) regulation of the instrumentalities of interstate commerce; and 3) regulation of activities that substantially affect interstate commerce. *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005).

80. The substantial effects test relies not merely on the Commerce Clause, but upon the Necessary and Proper Clause as well. *See Gonzales v. Raich*, 545 U.S. 1, 33-42 (2005) (Scalia, J., concurring).

81. Regulating the eviction of tenants is not a regulation of a channel nor an instrumentality of interstate commerce.

82. Nor does the eviction of tenants from private property substantially effect interstate commerce.

83. The CDC provides no evidence or findings supporting any claim that removing individuals who are unlawfully present from private property will have a substantial impact on the national economy.

84. Nor is the Eviction Moratorium Order part of some broader economic regulatory scheme that would be undercut if the federal government were not permitted to stop evictions.

85. There is currently no federal prohibition on those exposed to COVID-19 moving across state lines.

86. And there are no findings or evidence in the Eviction Moratorium Order that suggest a federal restriction on individuals exposed to COVID-19 moving across state lines would be undercut if the federal government could not prevent evictions from private property.

87. The Eviction Moratorium Order is not even a regulation of economic activity.

88. The Eviction Moratorium Order does not alter the commercial obligations of tenants, such as the payment of rent.

89. Instead, the Eviction Moratorium Order punishes property owners for exercising their rights to remove unlawfully present persons from their property, or

for initiating legal proceedings to evict under state law.

90. The Eviction Moratorium Order does not contain a "jurisdiction hook" that limits its operation to those traveling in interstate commerce, or to those who have been exposed to COVID-19.

91. The Eviction Moratorium Order instead expands federal authority into areas of traditional state power by regulating private property rights, private contracts, and the right to invoke traditional state legal proceedings.

92. The Eviction Moratorium Order therefore requires the exercise of a great and independent federal power not recognized under the Commerce Clause or the Necessary and Proper Clause.

## COUNT II
## THE EVICTION MORATORIUM ORDER VIOLATES
## THE ADMINISTRATIVE PROCEDURE ACT

93. Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

94. Under the Administrative Procedure Act, an agency action is invalid if it is contrary to any constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2)(B).

95. An agency action that would extend an act of Congress beyond Congress' enumerated powers is contrary to a constitutional right, power, privilege, or immunity and not in accordance with law.

96. The Eviction Moratorium Order constitutes final agency action.

97. The Eviction Moratorium Order violates 5 U.S.C. § 706 of the

Administrative Procedure Act because it neither implicates the exercise of any enumerated power nor is it necessary and proper to such an exercise.

## INJUNCTIVE RELIEF ALLEGATIONS

98. Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

99. Plaintiffs allege that both on its face and as applied, the Eviction Moratorium Order violates their constitutional rights.

100. If an injunction does not issue enjoining Defendants from enforcing the Eviction Moratorium Order, Plaintiffs will be irreparably harmed.

101. Plaintiffs have no plain, speedy, and adequate remedy at law to prevent the Defendants from enforcing the Eviction Moratorium Order.

102. If not enjoined by this Court, Defendants will continue to enforce the Eviction Moratorium Order in derogation of Plaintiffs' rights.

103. Accordingly, injunctive relief is appropriate.

## DECLARATORY RELIEF ALLEGATIONS

104. Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

105. An actual and substantial controversy exists between Plaintiffs and Defendants as to their legal rights and duties with respect to whether the Eviction Moratorium Order violates the United States Constitution.

106. This case is presently justiciable because the Eviction Moratorium Order applies to Plaintiffs on its face and Plaintiffs have tenants who have invoked

the protection of the Eviction Moratorium Order.

107.    Declaratory relief is therefore appropriate to resolve this controversy.

## PRAYER FOR RELIEF

Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring unconstitutional the Eviction Moratorium Order.

Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue preliminary and permanent injunctions prohibiting Defendants from enforcing the Eviction Moratorium Order.

WHEREFORE, Plaintiffs pray for judgment against Defendants and that the Court:

(1)    declare that the Eviction Moratorium Order is unconstitutional on its face because it is unsupported by any power granted to any branch of the federal government by the United States Constitution;

(2)    declare that the Eviction Moratorium Order is invalid under the Administrative Procedure Act, 5 U.S.C. § 706, because it is inconsistent with constitutional right, power, privilege, or immunity and not in accordance with law;

(3)    issue a preliminary injunction against the Defendants, as well as all agents, administrators, employees, or other persons acting on behalf of the Defendants, from enforcing the Eviction Moratorium Order;

(4)    issue a permanent injunction against the Defendants, as well as all agents, administrators, employees, or other persons acting on behalf of the

Defendants, from enforcing the Eviction Moratorium Order;

(5) award Plaintiffs their costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney fees pursuant to 28 U.S.C. § 2412; and

(6) grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully Submitted,

*/s/Robert Henneke*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
RYAN D. WALTERS
Texas Bar No. 24105085
rwalters@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, TX 78701
Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728

KIMBERLY S. HERMANN
(*pro hac vice* pending)
Georgia Bar No. 646473
khermann@southeasternlegal.org
CELIA HOWARD O'LEARY
(*pro hac vice* pending)
coleary@southeasternlegal.org
Georgia Bar No. 747472
SOUTHEASTERN LEGAL FOUNDATION
560 West Crossville Rd., Ste. 104
Roswell, GA 30075
Telephone: (770) 977-2131

***Attorneys for Plaintiffs***