IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| LAUREN TERKEL; PINEYWOODS ARCADIA HOME TEAM, LTD; LUFKIN CREEKSIDE APARTMENTS, LTD; LUFKIN CREEKSIDE APARTMENTS II, LTD; LAKERIDGE APARTMENTS, LTD; WEATHERFORD MEADOW VISTA APARTMENTS, LP; and MACDONALD PROPERTY MANAGEMENT, LLC;<br>*Plaintiffs*,<br><br>v.<br><br>CENTERS FOR DISEASE CONTROL AND PREVENTION; ROBERT R. REDFIELD, in his official capacity as Director of the Centers for Disease Control and Prevention; NINA WITKOFSKY, in her official capacity as Acting Chief of Staff for the Centers for Disease Control and Prevention; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; and ALEX AZAR, in his official capacity as Secretary of the Department of Health and Human Services;<br>*Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 6:20-cv-564-JCB<br><br>JUDGE BARKER<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs[1] file this reply in support of their motion for preliminary injunction against Defendants Centers for Disease Control and Prevention, et al. (collectively, "the CDC"). The CDC's order challenged in this case, mandating a moratorium on evictions (the "CDC Order"), should be preliminarily enjoined.

**SUMMARY OF ARGUMENT**

Plaintiffs are substantially likely to prevail on the merits here because they have correctly explicated the current state of Necessary and Proper Clause jurisprudence and effectively demonstrated the application of that precedent to the instant case. Any connection between the activities regulated under the Order and interstate commerce is far too tenuous to pass the substantial effects test. The Order also lacks a jurisdictional hook, findings, and a limiting principle sufficient to justify it as a legitimate exercise of federal power. Finally, even if the Order could be said to be "necessary," it is in no way "proper."

Nor are the CDC's attempts to downplay Plaintiffs' irreparable injuries effective. First, the CDC fails to address Plaintiffs' argument that they have suffered irreparable injury based on the CDC's sovereign immunity from suits for damages. Further, the CDC relies almost exclusively on inapposite out-of-circuit district court decisions that do not feature the same allegations of harm as those in this case. Finally, the CDC incorrectly asserts that *per se* irreparable injury can only involve violations of individual constitutional rights, but not structural constitutional protections—invoking a false distinction that the Fifth Circuit has specifically rejected.

Plaintiffs also meet the remaining two prongs for granting a preliminary injunction. Despite the CDC's attempt to focus on Plaintiffs' very real personal financial harm, the more

---

[1] Plaintiffs are Lauren Terkel, Pineywoods Arcadia Home Team, Ltd. ("Pineywoods"), Lufkin Creekside Apartments, Ltd. ("Creekside"), Lufkin Creekside Apartments II, Ltd. ("Creekside II"), Lakeridge Apartments, Ltd. ("Lakeridge"), Weatherford Meadow Vista Apartments, Ltd. ("Meadow Vista"), and MacDonald Property Management, LLC ("MacDonald") (collectively, the "Plaintiffs").

1

relevant injury to these inquiries is the paramount public interest in seeing the government comply with constitutional guarantees. When balanced against injunctive relief that is limited to only the instant Plaintiffs, the balance of equities tips decidedly in Plaintiffs' favor.

Because the CDC's flawed approach requires a complete rewrite of Necessary and Proper and Commerce Clause jurisprudence, fails to recognize the importance and urgency of vindicating legitimate constitutional claims, and assumes that the public interest is whatever the government says it is, this Court should grant Plaintiffs' Motion.

## ARGUMENT

Plaintiffs satisfy all four elements[2] for a preliminary injunction: 1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) granting the injunction is not adverse to the public interest. *Dialysis Patient Citizens v. Burwell*, No. 4:17-CV- 16, 2017 U.S. Dist. LEXIS 10145 at *6 (E.D. Tex. Jan. 25, 2017) (citing *Canal Auth. Of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).[3] In applying these

---

[2] The CDC disputes that the Court may employ a "sliding scale" approach and disputes the continued viability of *Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979). Dkt. #11, CDC Memo. at 10 n.2. But courts in this Circuit continue to cite *Florida Medical* for that proposition. *See, e.g.*, *Texas v. United States*, 328 F. Supp. 3d 662, 737 (S.D. Tex. 2018) (Hanen, J.) ("the law allows a lesser level of precision and proof [of irreparable injury] in a case where the proof of damages is clear and where the movant has clearly shown a likelihood of success on the merits. *Fla. Med. Ass'n. Inc. v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979).").

[3] The CDC incorrectly describes the preliminary injunction sought here as seeking to alter the status quo. Dkt. #11, CDC Memo. at 10. The relevant time period is before the action that is challenged occurred (here, the issuance of the CDC Order):
> It is settled that the issuance of a prohibitory injunction freezes the status quo and is intended to "preserve the relative positions of the parties until a trial on the merits can be held." *See Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)). Generally, the status quo is defined as the "'last peaceable uncontested status' existing between the parties before the dispute developed." *See Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1298 n.5 (10th Cir. 2006).

*Pendergest-Holt v. Certain Under Writers at Lloyd's of London*, 681 F. Supp. 2d 816, 821 n.4 (S.D. Tex. 2010).

2

elements, the CDC approach can be summed up as advancing the following poorly supported assertions: (1) activities with *any* economic effect are *ipso facto* interstate commerce; (2) injunctive relief is always inappropriate for constitutional injuries if there is any chance—however remote—that a plaintiff may be able to recover damages at some point in the future; and (3) the balance of equities and the public interest always favor the government when it claims a public health emergency.

I. **Plaintiffs Are Likely to Succeed on the Merits.**

To establish a likelihood of success on the merits, Plaintiffs need not prove their case in full: "Even some likelihood of success can be enough to support the issuance of a preliminary injunction." *Ass'n of Taxicab Operators, USA v. City of Dall.*, 760 F. Supp. 2d 693, 696 (N.D. Tex. 2010). Plaintiffs easily meet their burden here. The CDC's response would effectively require this Court to rewrite Commerce Clause jurisprudence into a single-step test where any activity that may affect interstate commerce is *ipso facto* within federal control. Given this novel legal theory, preliminary injunctive relief is especially proper in this case.

A. **The CDC Misinterprets the Substantial Effects Test.**

There is no dispute that the CDC Order is constitutionally only permissible—if at all— under the third *Lopez* category—*i.e.*, the "substantial effects" test. *United States v. Lopez*, 514 U.S. 549, 558-59 (1995). The Parties differ on how that test should be applied.

The Parties' briefing provides three potential frameworks for the substantial effects test— only two of which are defensible. The first is the older Commerce Clause approach from cases like *Lopez* and *United States v. Morrison*, 529 U.S. 598 (2000). Under that framework, the court evaluates each of the four *Morrison* factors to determine whether the CDC Order meets the substantial effects test. While this framework is incomplete for the reasons explained by Justice

Scalia in *Gonzales v. Raich*, 545 U.S. 1, 33-42 (2005) (Scalia, J., concurring), it finds support in older pre-*Raich* Supreme Court and Fifth Circuit precedent, *see, e.g.*, *GDF Realty Invs., Ltd. v. Norton*, 326 F.3d 622, 628 (5th Cir. 2003); *Groome Res., Ltd. v. Par. of Jefferson*, 234 F.3d 192, 204 (5th Cir. 2000). To the extent that this Court finds that the *Raich* opinion did not sufficiently clarify the incomplete nature of that older approach, such a framework could be applied here.[4]

The second potential framework is the Necessary and Proper Clause approach adopted in *Raich* and explained in Plaintiffs' opening brief. Because this approach holds that cases like *Lopez* and *Morrison* were Necessary and Proper Clause cases, it also begins with the four *Morrison* factors but then adds the additional step of determining whether the regulation is "proper." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 560 (2012) (*N.F.I.B.*); *see also Raich*, 545 U.S. at 39 (Scalia, J., concurring). As explained by Justice Scalia in *Raich*, this framework is more consistent with the text of the Constitution and better explains the evidence-based, federalism-sensitive rational basis scrutiny applied in substantial effects cases like *Lopez* and *Morrison*. *Raich*, 545 U.S. at 34, 38-39.[5] That framework should be applied here.[6]

The third potential framework is the single-step, no-evidence rational basis test proposed by the CDC. Under the CDC's approach, the primary question is whether the regulation affects

---

[4] For example, the Tenth Circuit continues to follow the traditional Commerce Clause approach that is independent of the Necessary and Proper Clause. *See People for the Ethical Treatment of Prop. Owners v. United States Fish & Wildlife Serv.*, 852 F.3d 990, 1005 n.8 (10th Cir. 2017).

[5] Contrary to the CDC's assertions, this framework is not merely cobbled together from concurring opinions. The majority opinion in *Raich* claimed to be applying the Necessary and Proper Clause, and not the Commerce Clause alone. *Raich*, 545 U.S. at 5, 22. Moreover, the Supreme Court has since referred to *Raich*, *Lopez*, and *Morrison* as Necessary and Proper Clause cases. *See, e.g.*, *United States v. Comstock*, 560 U.S. 126, 135, 148 (2010). And both the Supreme Court and the Fifth Circuit have repeatedly pointed to Justice Scalia's concurrence in *Raich* for guidance on how the Necessary and Proper Clause framework applies. *See, e.g.*, *Comstock*, 560 U.S. at 135 (citing Justice Scalia's concurrence in *Raich* as authoritative on the scope of the Necessary and Proper clause); *United States v. Whaley*, 577 F.3d 254, 260 (5th Cir. 2009) (expressly adopting Justice Scalia's interpretation in *Raich* regarding the third *Lopez* category as a Necessary and Proper Clause test).

[6] In a footnote, the CDC points to *Markle Interests, LLC v. United States Fish & Wildlife Serv.*, 827 F.3d 452, 475–76 (5th Cir. 2016), but the Necessary and Proper Clause was not raised in that case and the case has no precedential value because it was vacated by the Supreme Court.

4

some sort of economic activity. If it does, then the court disregards all four *Morrison* factors and simply asks whether Congress could have rationally concluded that the regulated activity affects interstate commerce. Dkt. #11, CDC Memo. at 21. Given the highly deferential nature of such rational basis scrutiny, and the inherent interconnectedness of the economy, this test effectively collapses into a single question—does the regulation affect commercial activity? This approach to the Commerce Clause has never been adopted by any court[7] and flatly contradicts *Morrison,* which holds that the economic nature of the regulated activity is just one of four factors to be considered.

The CDC's approach is also contrary to the text of the Constitution. The enumeration of a power over *interstate* commerce presupposes that there is some commerce that is "the exclusively internal commerce of a State" and therefore beyond federal control. *Morrison*, 529 U.S. at 616 n.7 (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 195 (1824)). Under the CDC's single-factor approach, however, it is difficult to imagine any local economic activity that would be beyond federal control. "In a sense any conduct in this interdependent world of ours has an ultimate commercial origin or consequence." *Id*. at 611. Accordingly, we begin with the four *Morrison* factors below.

### B. The CDC Order Fails the *Morrison* Test.

#### 1. The CDC Order does not regulate economic activity.

The first factor is whether the Order regulates economic activity. The CDC claims that the Order regulates economic activity because it "directly regulates the economic relationship between

---

[7] The CDC argues that *Raich* overturned *Morrison* and replaced it with the single step approach it advocates. But both the majority and concurrence in *Raich* made clear that it left *Morrison* intact. Indeed, *Raich* itself evaluated many of the very factors at issue in *Morrison*. *See Raich* 545 U.S. at 25 (discussing whether the regulation was economic); *id*. at 20-21 (discussing the extensive congressional findings); *id*. at 28-29 (discussing the close means-end fit). The CDC, tellingly, does not cite a single case holding that *Raich* fully eliminates the need to consider the *Morrison* factors.

landlords and tenants." Dkt. #11, CDC Memo. at 22. But the Order is explicit that it "has **_no effect_** on the contractual obligations of renters to pay rent and shall not preclude charging or collecting fees, penalties, or interest as a result of the failure to pay rent or other housing payment on a timely basis, under the terms of any applicable contract." 85 Fed. Reg. 55296. (emphasis added). In other words, the Order explicitly leaves all the economic elements of the rental contract in place. Punishment under the Order is triggered *solely* by the non-economic actions of removing unlawfully present individuals from private property or invoking state legal proceedings to do so. 85 Fed. Reg. 55293. As explained in Plaintiffs' Motion, neither of those things are regulations of economic activity. *See GDF Realty*, 326 F.3d 622, 634 (removal of a species from private property, even for economic reasons, was not economic activity); *Gustafson v. Springfield, Inc.*, 2020 PA Super 239 * 48 (2020) (quoting *Lopez*, 514 U.S. at 567) ("the filing of a state lawsuit, in state court, based on state tort law, 'is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce'").

The CDC does not meaningfully address this distinction nor does it address *Gustafson* at all. Instead, it points to *Russell v. United States*, 471 U.S. 858 (1985) and *Jones v. United States*, 529 U.S. 848 (2000),[8] for the proposition that any regulation affecting rental property is a "quintessential" regulation of economic activity for Commerce Clause purposes. But, contrary to CDC's assertions, neither *Russell* nor *Jones* were Commerce Clause cases. Both were statutory construction cases expressly limited to whether the arson in each respective case involved a building "being used in an activity affecting commerce ***within the meaning of § 844(i)***"—the federal arson statute. *Jones*, 529 U.S. at 853 (emphasis added) (quoting *Russell*). *Russell* found that burning down an apartment was the destruction of a building "being used in an activity

---

[8] The CDC also points to *Groome*, 234 F.3d 192, but Plaintiffs already distinguish that case in their opening brief and therefore do not repeat those arguments here.

affecting commerce within the meaning of § 844(i)." *Id*. And *Jones* held that the statute did not apply to the burning of a private residential dwelling. *Id*. at 859.[9]

*Russell* and *Jones* are not useful here. First, both predate *Morrison*. Second, both cases asked only whether an activity affects commerce *within the meaning of § 844(i)*. But *Morrison* is not concerned with whether an activity merely "affect[s] commerce within the meaning of §844(i)." *Morrison* turns on whether a regulated activity "*substantially* affects interstate commerce" within the meaning of the Commerce Clause. The distinction between "substantially affecting interstate commerce" and merely "affecting commerce" within the meaning of a statute is significant. As the Supreme Court noted, "[i]n a sense any conduct in this interdependent world of ours has an ultimate commercial origin or consequence, but we have not yet said the commerce power may reach so far." *Morrison*, 529 U.S. at 611. Finally, contrary to the CDC's suggestions, neither *Russell* nor *Jones* held that any regulation of activities involving rental properties is *ipso facto* a regulation of economic activity. To the contrary, the Court implicitly acknowledged the law prohibiting arson remained a regulation of "traditionally local criminal conduct" despite its effects on rental properties. *See Jones*, 529 U.S. at 858.

Similarly, the Order here regulates the removal of unlawfully present individuals from private property and the invocation of state legal proceedings. This regulation of non-economic activity is not transformed into a regulation of economic activity simply because that non-economic activity involves rental properties. *See GDF Realty*, 326 F.3d at 634 (removal of species from property was not economic activity simply because it involved commercial property).

---

[9] The CDC also erroneously claims that *United States v. Nguyen*, 117 F.3d 796, 798 (5th Cir. 1997), is a Commerce Clause case. But it also involved only the interpretation of § 844(i). Indeed, the Commerce Clause was not even discussed. And *United States v. Corona* is likewise inapposite, as that case held that federal prosecution was within the Commerce Clause when an arsonist burned down a "business that regularly offered transportation services to interstate travelers arriving at New Orleans International Airport." 108 F.3d 565, 571 (5th Cir. 1997).

7

## 2. The CDC Order has No Jurisdictional Element.

The CDC admits that the Order has no "jurisdictional element" that restricts it to interstate activities. Dkt. #11, CDC Memo. at 24. The CDC tries to circumvent this by pointing to other statutes and regulations that might contain jurisdictional elements. *Id*. But the possible existence of jurisdictional elements in other statutes or regulations is irrelevant. A jurisdictional element is important because it explicitly limits the law at issue "to a discrete set of [activities] that additionally have an explicit connection with or effect on interstate commerce." *Morrison*, 529 U.S. at 611-12. That some separate statute may have a jurisdictional element that the CDC both ignored when adopting the Order and does not apply when enforcing it is wholly irrelevant.[10]

## 3. The CDC Order does not contain sufficient findings to justify the regulation.

As explained in Plaintiffs' Motion, the findings evaluated under the substantial effects test differ depending on whether a regulation of economic activity is involved. When the activity is economic, the findings should show that the regulated activity, in the aggregate, substantially affects interstate commerce. By contrast, if the activity is non-economic, the findings should show that the order is "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Lopez*, 514 U.S. at 561.

The CDC admits that the Order contains no findings showing that it is "an essential part of a larger regulation of economic activity." Dkt. #11, CDC Memo. at 11, 25 n. 8. Accordingly, if this Court rightly concludes that the Order regulates non-economic activity, then the CDC has effectively confessed judgment on this factor. The CDC notes that the Order features claims about

---

[10] If anything, the CDC's position indicates that it exceeded its statutory authority in adopting an order that plainly applies to intrastate non-economic activities.

the effect that evictions allegedly may have interstate travel. *Id*. Plaintiffs' objections to these "findings," which were not addressed in the CDC's reply, are noted in their Motion for Preliminary Injunction. Dkt. #3, Pls.' Mot. at 18-19.

### 4. The CDC does not posit any meaningful limiting principle on its theory of federal power.

Next, the Court must evaluate whether the CDC's argument requires the court "to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Lopez*, 514 U.S. at 567. As explained in Plaintiffs' Motion, the Order fails this test because its logic jumping inferences would justify federal regulation of such local matters as divorce—a possibility deemed impermissible in *Morrison*. Dkt. #3, Pls.' Mot. at 19-21. The CDC does not refute the logic of Plaintiffs' argument. Instead, it argues that eviction proceedings can be distinguished from divorce proceedings because evictions are economic activity. Dkt. # 11, CDC Memo. at 25-26.

First, as explained above, the Order does not regulate economic activity. Second, even if the Order did regulate economic activity, the CDC's approach merges the first and fourth *Morrison* factors in such a way that *any* economic activity, regardless how tenuous its connection to interstate commerce, is *ipso facto* interstate commerce. Such a broad view of the commerce power is contrary to the text of the Constitution.

### C. The CDC Order Is Not a Proper Exercise of the Commerce Power.

Even assuming that the CDC could show that the regulation at issue here was "necessary" under the four-part test above, this Court would still need to evaluate whether the regulation was "proper." *N.F.I.B.*, 567 U.S. at 560; *see also Raich*, 545 U.S. at 39 (Scalia, concurring) (adding the "proper" analysis as an additional consideration after the *Morrison* factors). As explained in

9

Plaintiffs' Motion, the CDC Order fails this test because it is an unprecedented expansion of federal authority into the traditional police powers of the states. Dkt. #3, Pls.' Mot. at 22-24.

The CDC raises two objections in response. First, it claims that the Necessary and Proper Clause analysis in *N.F.I.B.* is not binding because it was not joined by any other member of the court. Dkt. #11, CDC Memo. at 26. But the Fifth Circuit recently held that the holdings of the four dissenters plus Chief Justice Roberts on that issue constitute a holding of the Court. *See Texas v. United States*, 945 F.3d 355, 372 (5th Cir. 2019) ("**The Court** also **held** that the provision could not be justified under the Constitution's Necessary and Proper Clause.") (emphasis added).[11]

Second, the CDC claims that the Order is neither novel nor improper because it is a regulation of commercial activity and "the Supreme Court and the Fifth Circuit have long recognized the validity of federal regulation of the market for residential rental properties." Dkt. #11, CDC Memo. at 27. But as explained above, the CDC Order makes clear that it does not regulate commercial activity or the market for residential properties. 85 Fed. Reg. 55296. It regulates Plaintiffs' abilities to remove unlawfully present individuals from private property and initiate state legal proceedings. 85 Fed. Reg. 55293. Tellingly, the CDC is unable to cite a single example of prior federal regulation with such reach. Plaintiffs have therefore established a reasonable likelihood of success on the merits.

## II. Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief.

The CDC fails to even address Plaintiffs' argument that the sovereign immunity bar from recovering damages from the agency is alone sufficient to render their harm irreparable. Dkt. #3, Pls.' Mot. at 26. Further, the CDC's argument that Plaintiffs have not shown that they would be unable to recover damages from their tenants also falls short. As a matter of law, the CDC Order

---

[11] *See also id.* at 387 n.32, 388, 390 (all explaining that the combined holding of the four dissenters plus Chief Justice Roberts on the Necessary and Proper Clause is controlling).

itself demonstrates the remoteness of any possibility for future recovery from the tenants by only extending its protections to a tenant who satisfies these requirements:

> (3) the individual is unable to pay the full rent or make a full housing payment due to substantial loss of household income, loss of compensable hours of work or wages, a lay-off, or extraordinary out-of-pocket medical expenses;
>
> (4) the individual is using best efforts to make timely partial payments that are as close to the full payment as the individual's circumstances may permit, taking into account other nondiscretionary expenses; and
>
> (5) eviction would likely render the individual homeless—or force the individual to move into and live in close quarters in a new congregate or shared living setting—because the individual has no other available housing options.

85 Fed. Reg. 55292, 55293 (Sept. 4, 2020). People on the verge of being homeless due to economic hardship are not likely to be able to pay past rent that has accumulated for months, and Plaintiffs have demonstrated that they have tenants that fall into this category. Decl. of Lauren Terkel at ¶¶ 5-6, 8-10; Decl. of Carol C. Moore, ¶¶14-16; Decl. of Jerry D. Moore, ¶¶14-15; Decl. of Justin MacDonald, ¶¶10-11, 17-18.

Furthermore, "destruction of a business model may constitute irreparable injury." *Teledoc, Inc. v. Tex. Med. Bd.*, 112 F. Supp. 3d 529, 541-42 (W.D. Tex. 2015). The inability to evict delinquent tenants and replace them with solvent ones could lead Plaintiffs to default on their mortgage obligations, and a resulting foreclosure would also constitute both a non-compliance event and a reportable event to the Internal Revenue Service, likely negatively affecting each entity's ability to build Low-Income Housing Tax Credit properties in the future. Decl. of Carol C. Moore, ¶¶ 23-24; Decl. of Jerry D. Moore, ¶¶ 22-23; Decl. of Justin MacDonald, ¶¶ 9, 13.

The CDC points to non-binding district court orders in other challenges to the CDC Order that are fundamentally different than those at issue here. First, those cases were either based on an unreasonable and unsupported standard for irreparable injury by requiring Plaintiffs to produce evidence of all of their renters' assets while discounting the sworn declarations of those same

renters regarding their insolvency, s*ee, e.g.*, *Brown v. Azar*, No. 1:20-CV-03702-JPB, 2020 U.S. Dist. LEXIS 201475, at \*55-65 (N.D. Ga. Oct. 29, 2020), or ignored the sworn declarations for this purpose altogether, *see, e.g.*, *Tiger Lily LLC v. U.S. Dep't of Housing & Urban Dev.*, ECF No. 69, No. 20-2692, slip op. at 18 (W.D. Tenn. Nov. 6, 2020) (attached as Exhibit A to Dkt. #11, CDC Memo.). There is no support for such a high burden.

Second, Plaintiffs have raised additional arguments for irreparable injury that were not raised in those cases, including sovereign immunity barring recovery against the agency and possible foreclosure of their properties. *See, e.g.*, *Tiger Lily LLC,* No. 20-2692, slip op. at 19 ("Nor does any Plaintiff allege that it is in danger of losing its properties. Absent such facts, the temporary interference with Plaintiffs' real property imposed by the [CDC] Order does not constitute irreparable harm."). Finally, the plaintiffs in those cases failed to raise valid constitutional claims and therefore could not rely upon the case law that indicates that constitutional violations are *per se* irreparable injury.

Contrary to the CDC's assertions, the *per se* irreparable injury treatment given to constitutional violations is not limited to a small subset of individual rights that are unlike the structural federalism challenge here. Dkt. #11, CDC Memo. at 11. Indeed, this dichotomy between individual rights and structural guarantees is a false one. *See Bond v. United States*, 564 U.S. 211, 222, 225 (2011). As the Fifth Circuit has said in upholding a preliminary injunction:

> Congress has exercised its authority under the Commerce Clause to regulate airlines . . . If the states were permitted to enforce their various laws, the airlines would be subjected to the demands and criteria of numerous legislatures rather than being required to comply only with federal laws and regulations. This would cause irreparable injury by depriving the airlines of a federally created right …. The appellants miss the thrust of the airlines' argument by contending that the only threatened injury is a loss of revenue, which is not irreparable. We conclude that permitting states to regulate airline advertising in the face of the preemption language…would

12

> violate the Supremacy Clause, causing irreparable injury….

*Trans World Airlines v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990).[12] Plaintiffs have therefore established irreparable injury.

### III. The Threatened Injury to Plaintiffs Outweighs Whatever Damage a Preliminary Injunction May Cause the CDC, and an Injunction of this Unconstitutional Action Will Serve the Public Interest.

Finally, enjoining the CDC Order will serve the public interest because Plaintiffs' constitutional injuries clearly outweigh any harm that would result from enjoining enforcement against the small number of parties involved in this litigation. In attempting to favorably frame the balance of equities inquiry, the CDC juxtaposes the government's interest in "prevent[ing] the spread of an easily transmissible, potentially serious, and sometimes fatal disease" with Plaintiffs' mere "individual economic interests." Dkt. #11, CDC Memo. at 27-28. But that comparison both ignores the substantial public interest inherent in Plaintiffs' claims and significantly overstates the CDC's potential harm.

It is axiomatic that "the Constitution is the ultimate expression of the public interest," *Llewelyn v. Oakland Cty. Prosecutor's Office*, 402 F. Supp. 1379, 1393 (E.D. Mich. 1975), and that "it is always in the public interest to prevent the violation of a party's constitutional rights," *D.M. v. Minn. State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019); *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014). Nor is the application of these principles limited to only violations of the First Amendment. *See, e.g.*, *Daves v. Dall. Cty.*, 341 F. Supp. 3d 688 (N.D. Tex. 2018) (Equal Protection and Procedural Due Process); *Cole v. Collier*,

---

[12] *See also City of Phila. v. Sessions*, 280 F. Supp. 3d 579, 656-657 (E.D. Pa. 2017) (federal conditions violating spending clause constitute *per se* irreparable injury for preliminary injunction); *Oregon v. Trump*, 406 F. Supp. 3d 940, 974 (D. Ore. 2019) (finding Tenth Amendment violation by federal spending restrictions constitutes *per se* irreparable injury for permanent injunction). Additionally, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

No. 4:14-CV-1698, 2017 U.S. Dist. LEXIS 112095 (S.D. Tex. 2017) (Eighth Amendment unconstitutional conditions of confinement).

Further, courts not only apply this concept to violations of individual rights, but also to structural constitutional violations. *See, e.g.*, *Chamber of Commerce of the United States v. Becerra*, 438 F. Supp. 3d 1078 (E.D. Cal. 2020) (preemption under the Supremacy Clause); *Colorado v. DeJoy*, Civil Action No. 20-cv-2768-WJM, 2020 U.S. Dist. LEXIS 166962 (D. Colo. Sep. 12, 2020) (Colorado's constitutional right to establish the "Times, Places and Manner of holding Elections"). In fact, the Constitution's structural constraints and the rights of individuals are inextricably intertwined. *See Bond*, 564 U.S. at 223 (observing that it is "the constitutional structure of our Government that protects individual liberty"). In particular, "[f]ederalism secures the freedom of the individual." *Id.* at 221; *see also New York v. United States*, 505 U.S. 144, 181 (1992) (stating that "federalism secures to citizens the liberties that derive from the diffusion of sovereign power").

Accordingly, the public interest pursued by Plaintiffs in this litigation is paramount. Plaintiffs seek not only relief from the prospect of suffering substantial financial losses, but also to vindicate the Constitution: "[b]y denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power," and plaintiffs have a "direct interest in objecting to laws that upset the constitutional balance between the National Government and the States" *Bond*, 564 U.S. at 222. This interest in federalism has been recognized by the Supreme Court as "fundamental." *See Danforth v. Minnesota*, 552 U.S. 264, 280 (2008).

The CDC attempts to balance this fundamental constitutional interest with the threat of mass evictions nationwide during a pandemic. But this greatly misstates the relevant federal

14

interest at stake. In arguing against the prospect of a nationwide injunction, the CDC correctly points out that "any relief should be no broader than necessary to provide Plaintiffs with relief."[13] Dkt. #11, CDC Memo. at 29-30. However, with regard to preliminary injunctive relief, Plaintiffs seek only to enjoin enforcement by the government against the handful of parties to this lawsuit. Such limited relief will have relatively little impact on the government's interest in stemming the spread of COVID-19, particularly since there is no evidence that any of the individuals facing eviction are currently infected with that disease. When balanced against the fundamental constitutional interests discussed above, the balance of equities clearly tips toward enjoining enforcement against the six companies and one individual involved in this litigation.

## CONCLUSION

The Court should issue a preliminary injunction, enjoining the CDC from enforcing the CDC Order.

Respectfully Submitted,

*/s/Robert Henneke*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
RYAN D. WALTERS
Texas Bar No. 24105085

---

[13] However, Plaintiffs disagree with the other limitations on injunctive relief that the CDC would have this Court impose. The CDC cites *Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017), for the proposition that a "party must make [a] clear showing of standing to obtain a preliminary injunction." Dkt. #11, CDC Memo. at 29 n. 10. However, the preliminary injunction was denied in that case because *none* of the parties could establish standing. Conversely, several of the parties to the instant litigation independently possess standing, and thus relief should be extended to all parties given that "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Texas v. United States*, 809 F.3d 134, 151 (5th Cir. 2015) (quoting *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)). Nor do Plaintiffs agree that the only way to establish standing is through receipt of a tenant declaration. This may be required for a current "actual" injury, but Plaintiffs also seek to enjoin "imminent" injuries such as the inability to evict tenants that submit declarations in the future. Only enjoining both actual and imminent injuries will provide "complete relief to the plaintiffs." *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).

15

rwalters@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, TX 78701
Telephone:     (512) 472-2700
Facsimile:      (512) 472-2728

KIMBERLY S. HERMANN
(*admitted pro hac vice*)
Georgia Bar No. 646473
khermann@southeasternlegal.org
CELIA HOWARD O'LEARY
(*admitted pro hac vice*)
Georgia Bar No. 747472
coleary@southeasternlegal.org
SOUTHEASTERN LEGAL FOUNDATION
560 West Crossville Rd., Ste. 104
Roswell, GA 30075
Telephone:     (770) 977-2131

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was electronically filed on November 16, 2020 with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Robert Henneke*
ROBERT HENNEKE
