IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| LAUREN TERKEL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CENTERS FOR DISEASE CONTROL AND PREVENTION, *et al.*, <br><br> Defendants. | Case No. 6:20-cv-564-JCB |

**DEFENDANTS' MEMORANDUM IN RESPONSE
TO THE COURT'S NOVEMBER 20, 2020 ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT..................................................................................................................................2

I.      If the Court Chooses to Rule upon the Request for Declaratory Judgment Now, It Should Declare that the Order Is a Constitutional Exercise of Federal Authority..................................2

      A.      The Order Is Plainly Authorized under the Commerce Clause. .....................................3

      B.      Alternatively, the Order Is a "Necessary" and "Proper" Means of Achieving a Legitimate End under the Commerce Power....................................................................8

III.     The Order Precludes Evictions for Nonpayment of Rent............................................................11

CONCLUSION.............................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Adames v. Sheahan*,
  909 N.E. 2d 742 (Ill. 2009) ...................................................................................................7

*Anthony v. State*,
  209 S.W. 3d 296 (Tex. Crim. App. 2006) ............................................................................12

*City of New York v. Beretta U.S.A. Corp.*,
  524 F.3d 384 (2d Cir. 2008) ...................................................................................................7

*Daniels v. State*,
  633 S.W. 2d 899 (Tex. Crim. App. 1982) ............................................................................12

*District of Columbia v. Beretta U.S.A. Corp.*,
  940 A.2d 163 (D.C. 2008) ......................................................................................................7

*GDF Realty Investments v. Norton*,
  326 F.3d 622 (5th Cir. 2003) ..................................................................................................6

*Gonzalez v. Raich*,
  545 U.S. 1 (2005) ........................................................................................................ 4, 5, 8, 9

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991) ..............................................................................................................10

*Groome Resources Ltd. v. Parish of Jefferson*,
  234 F.3d 192 (5th Cir. 2000) .................................................................................... 3, 4, 5, 6

*Gustafson v. Springfield, Inc.*,
  2020 WL 5755493 (Pa. App. Sept. 28, 2020) ................................................................. 6, 7

*Ileto v. Glock, Inc.*,
  565 F.3d 1126 (9th Cir. 2009) ................................................................................................7

*Jones v. United States*,
  529 U.S. 848 (2000) ................................................................................................................4

*NFIB v. Sebelius*,
  567 U.S. 519 (2012) ........................................................................................................ 8, 10

*Russell v. United States*,
  471 U.S. 858 (1985) ......................................................................................................... 3, 4

*Taylor v. United States*,
  136 S. Ct. 2074 (2016) ............................................................................................................4

*United States v. Alberts*,
    59 F. Supp. 298 (E.D. Wash. 1945) ........................................................................................... 10

*United States v. Bailey*,
    111 F.3d 1229 (5th Cir. 1997) .................................................................................................. 12

*United States v. Comstock*,
    560 U.S. 126 (2010) ............................................................................................................ 9, 10

*United States v. Lopez*,
    514 U.S. 549 (1995) ............................................................................................................. 3, 4

*United States v. Morrison*,
    529 U.S. 598 (2000) ............................................................................................................. 3, 4

*United States v. Whaley*,
    577 F.3d 254 (5th Cir. 2009) ..................................................................................................... 9

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ..................................................................................................... 2

*Wickard v. Filburn*,
    317 U.S. 111 (1942) ................................................................................................................... 5

*Woods-Drake v. Lundy*,
    667 F.2d 1198 (5th Cir. 1982) ................................................................................................... 9

**Statutes**

42 U.S.C. § 264 .............................................................................................................................. 12

50 U.S.C. § 3951 ............................................................................................................................ 10

Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020) ....................................................................... 9

Texas Penal Code § 30.05 ....................................................................................................... 11, 12

**Rules**

Federal Rule of Civil Procedure 56(f) ......................................................................................... 1, 2

**Regulations**

85 Fed. Reg. 55292 (Sept. 4, 2020) .......................................................................................... 11, 12

## INTRODUCTION

After briefing and argument on Plaintiffs' motion for a preliminary injunction, the Court issued an order stating that it would consider granting summary judgment on Plaintiffs' request for declaratory relief. *See* Order, ECF No. 18. The Court directed the parties to "provide any information that would counsel against considering or granting summary judgment." *Id.* at 2.

As an initial matter, although Federal Rule of Civil Procedure 56(f) permits a court to consider summary judgment sua sponte, there are good reasons for the Court to decline to exercise that discretion here. Plaintiffs chose to file a motion for preliminary injunction and, as Defendants have shown, they failed to carry their burden to meet any of the four elements required to warrant expedited relief. *See* Defs.' Mem. in Opp. to Pls.' Mot. for Prelim. Inj. (Defs.' Mem.), ECF No. 11. There is no cause for the Court to relieve them of those burdens and hastily consider a constitutional question, particularly where numerous other federal courts have found that the equities and public interest firmly counsel against enjoining regulations designed to prevent the spread of COVID-19. *See id.* at 27–29.

If the Court does decide to rule upon the request for declaratory judgment at this stage, however, it should find that the CDC Order is a valid exercise of the Commerce Clause authority. *See* Defs.' Mem. 14–27. As Defendants demonstrated in their opposition to Plaintiffs' motion for preliminary injunction, and as explained further below, the Order falls squarely within the commerce power under binding Supreme Court and Fifth Circuit precedent. Further, even if the commerce power alone did not directly permit the regulation at issue here—and it does—the Necessary and Proper Clause readily authorizes it.

Finally, in response to the Court's questions at argument, Defendants clarify the CDC's view that remaining on a rental property notwithstanding failure to pay rent in full is not a valid basis for eviction under the criminal activity exception to the Order based on the offense of criminal trespass as set forth in the Texas Penal Code.

# ARGUMENT

I.   **If the Court Chooses to Rule upon the Request for Declaratory Judgment Now, It Should Declare that the Order Is a Constitutional Exercise of Federal Authority.**

Although Rule 56(f) authorizes the Court to consider summary judgment sua sponte after providing notice and a reasonable time to respond, the sounder course here would be for the Court to resolve the pending motion for preliminary injunction rather than considering summary judgment—which Plaintiffs could have moved for, but did not.[1] If the Court finds that, as Defendants demonstrated in their opposition, Plaintiffs have failed to meet *any one* element of the test for preliminary injunction, it should join the multiple other federal courts that have declined to preliminarily enjoin the Order.  *See* Defs.' Mem. 9–10.  And if Plaintiffs have not fulfilled their burden to demonstrate that expedited relief is appropriate, there is no reason for the Court to exercise its discretion in pursuit of the hurried resolution of a constitutional question.[2]  This is particularly true given that the Order at issue is set to expire at the end of the month, and it is presently unknown whether it will be renewed or, if so, whether any renewed Order will include material changes that bear upon the resolution of Plaintiffs' Commerce Clause challenge.

---

[1] Defendants note that Plaintiffs have not submitted a statement of undisputed material facts, as required by the local rules, *see* Local R. CV-56(a), and that Rule 56(f) permits a court to consider summary judgment on its own "after identifying for the parties material facts that may not be genuinely in dispute," Fed. R. Civ. P. 56(f)(3).  Accordingly, to the extent the Court decides to consider summary judgment at this juncture, and in doing so relies on any findings or other statements in the CDC Order, it must deem those findings and statements uncontroverted.  To the extent that Plaintiffs rely on other facts, which they have not identified under the local rules, Defendants do not concede that such facts are either material or undisputed.

[2] It should be noted that there are pending challenges to the Order in five other federal courts that raise statutory and procedural claims, two of which have already moved past the preliminary injunction stage.  *See Brown v. Azar*, No. 20-3702 (N.D. Ga.); *Tiger Lily LLC v. U.S. Dep't of Housing & Urban Dev.*, No. 20-2692 (W.D. Tenn.).  Although in *Brown* the parties have requested a stay of further litigation pending appeal, *see Brown*, ECF No. 57, a summary judgment briefing schedule has been set in *Tiger Lily*, *see Tiger Lily*, ECF No. 76.  Because Plaintiffs here chose to raise only a constitutional claim, providing an opportunity for the courts in the earlier-filed suits to rule upon the statutory and procedural questions raised therein first would be consistent with constitutional avoidance principles. *See, e.g.*, *Whole Woman's Health v. Smith*, 896 F.3d 362, 370 (5th Cir. 2018).

If, however, the Court converts the preliminary injunction motion into one for summary judgment, it should declare that the Order is a valid exercise of the commerce power. It is undisputed that the federal government has the authority to regulate "activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995); *see also* Pls.' Mem. in Supp. of Mot. for Prelim. Inj. (Pls.' Mem.) 10, ECF No. 3. The parties disagree as to whether the Commerce Clause alone is a sufficient basis for the exercise of such power, *see* Defs.' Mem. 14–26, or whether regulation of activity that substantially affects interstate commerce is properly viewed as an exercise of the Necessary and Proper Clause to aid in the implementation of the commerce power, *see* Pls.' Mem. 12. Although Defendants maintain that this case is easily resolved by applying binding Commerce Clause precedent, this quarrel as to the constitutional basis for the substantial effects test is ultimately academic. Under either formulation, the Order at issue here is within the federal government's Article I powers, which Congress has validly delegated to CDC.

**A. The Order Is Plainly Authorized under the Commerce Clause.**

As demonstrated in Defendants' opposition, the Supreme Court and the Fifth Circuit have both recognized that regulations of the rental housing market—like the Order at issue here—fit comfortably within the commerce power. *See* Defs.' Mem. 16–18 (citing *Russell v. United States*, 471 U.S. 858 (1985) and *Groome Resources Ltd. v. Parish of Jefferson*, 234 F.3d 192 (5th Cir. 2000)). A straightforward application of this binding precedent dictates that the Order is authorized under the Commerce Clause. *See id.* at 16–20. This is particularly true given the "presumption of constitutionality" courts afford to the actions of coordinate branches of government, *United States v. Morrison*, 529 U.S. 598, 607 (2000), and the rational basis standard under which courts analyze Commerce Clause challenges, *see, e.g.*, *Lopez*, 514 U.S. at 557.

Plaintiffs' attempts to distinguish this controlling authority fall flat. They assert that the Court may disregard the Supreme Court's holding in *Russell* because (1) it is purportedly not a Commerce

3

Clause case and (2) it predates *Lopez* and *Morrison*.  *See* Pls.' Reply in Supp. of Mot. for Prelim. Inj. (Pls.' Reply) 6–7, ECF No. 13.  As to the first point, *Russell* is plainly a Commerce Clause case.  It is irrelevant that it analyzed whether an as-applied exercise of statutory authority was within the commerce power because the statute at issue reflected "an intent by Congress to exercise its full power under the Commerce Clause." 471 U.S. at 859.  *Russell*'s holding thus informs the reach of not only the statute, but also the commerce power.  As to the second point, although *Lopez* clarified that whether a regulation falls within the commerce power depends upon "whether the regulated activity 'substantially affects' interstate commerce," *see* 514 U.S. at 559, the Supreme Court in *Jones v. United States*, 529 U.S. 848 (2000), recognized that the conduct analyzed in *Russell* meets that test, *id.* at 853, as did the Fifth Circuit in *Groome*, 234 F.3d at 206–07.  Both decisions post-date *Lopez*, and the latter post-dates *Morrison*.

Moreover, the Supreme Court has repeatedly rejected Commerce Clause challenges based on the similarity of the facts presented to controlling case law—as Defendants urge the Court to do here.[3] For example, a decade after *Raich*, the Supreme Court held that the theft of illegal drugs was properly regulated under the Commerce Clause as a logical extension of the principles set forth in *Raich*.  *See Taylor v. United States*, 136 S. Ct. 2074, 2081 (2016).  The Supreme Court saw no need to utilize the *Lopez/Morrison* factors, or to mention the Necessary and Proper Clause.  Instead, it observed that the case "require[d] no more than that we graft our holding in *Raich* onto the commerce element of the

---

[3] Plaintiffs claim that, by pointing out that controlling precedent obviates the need to separately analyze the factors discussed in *Lopez* and *Morrison*, Defendants have proposed a new "test" that requires the conclusion that *Raich* overturned *Morrison*.  *See* Pls.' Reply 4–5 & n.7.  Not so.  As Defendants have explained, the *Lopez/Morrison* factors—which are not *prerequisites* for a regulation to pass muster under the Commerce Clause, but rather "considerations" that may "contribute[]" to a Commerce Clause analysis—demonstrate that the Order is a valid exercise of the commerce power.  *See Morrison*, 529 at 609; Defs.' Mem. 21–26.  But where a regulation plainly falls within that power under governing case law, there is simply no need to belabor the point by ticking through each of those considerations.  *See Taylor v. United States*, 136 S. Ct. 2074, 2081 (2016).

4

Hobbs Act." *Id.* at 2080. *Raich* similarly observed that the situation presented in that case was strikingly similar to that in *Wickard v. Filburn*, 317 U.S. 111 (1942), and that the challenged regulation should be upheld for the same reasons. *See* Defs.' Mem. 20. Because this case presents a logical extension of the principles set forth in *Russell* and *Groome*, the Court should take the same approach here.

But if the Court instead chooses to analyze the Order using the four *Lopez/Morrison* factors, the conclusion is identical: the Order regulates economic activity that has a substantial effect on interstate commerce, and thus is authorized by the Commerce Clause. *See* Defs.' Mem. 20–26. Most importantly, as Defendants' opposition shows, the Order regulates economic activity: the contractual relationship between landlords and tenants. *Id.* at 22–23. And, like the denial of reasonable accommodations analyzed in *Groome*, the actions prohibited by the Order—evictions—are "directly tied" to this economic activity; the Order operates on rental agreements by temporarily restricting an otherwise-available remedy for breach of contract. *See* 234 F.3d at 206. Because the activity regulated is the economic relationship between landlords and tenants, the fact that the Order leaves untouched one part of that contractual relationship—tenants' obligation to pay rent—is beside the point. *Contra* Pls.' Reply 6.

But even if Plaintiffs were correct that the Order regulates noneconomic activity—and they are not—the Order would still be an appropriate exercise of the commerce power because the activity regulated has a direct and substantial effect on interstate commerce. Plaintiffs' own declarations prove the point. Each Plaintiff has sworn that it incurred economic damages as a result of the Order. *See* Terkel Decl. ¶ 6; C. Moore Decl. ¶ 14; J. Moore Decl. ¶ 14; MacDonald Decl. ¶ 17. These declarations belie Plaintiffs' conclusory argument that "inference upon inference" is required to discern the Order's effect on interstate commerce. *See* Pls.' Reply 9. Nor do Plaintiffs make any attempt to square the two assertions; indeed, they could not. And when "viewed in the aggregate"—as black-letter law

5

requires—the economic effects of the Order (such as those Plaintiffs themselves claim to feel) "implicate[] an entire commercial industry." *Groome*, 234 F.3d at 206. Thus, as in *Groome*, "[t]he activity being regulated is one that directly affects the . . . rental housing market." *Id.* at 205.

On this score, *GDF Realty Investments v. Norton*, 326 F.3d 622 (5th Cir. 2003)—a decision upon which Plaintiffs rely heavily—is instructive. There, the Fifth Circuit *rejected* a Commerce Clause challenge to environmental regulation preventing "takes" of—essentially, harm to—certain cave-dwelling species residing solely in two Texas counties. *Id.* at 639. Although the court determined that the "takes" were both intrastate and noneconomic, it upheld the statute as applied to the cave species as part of a larger regulation of activity that, in the aggregate, substantially affected interstate commerce. *See id.* at 628, 638–40. The Order here is an even easier case because it regulates economic activity. *See* Defs.' Mem. 18, 22–23. But as even Plaintiffs' own cited cases show, the fact that the activity regulated, in the aggregate, substantially affects interstate commerce suffices to uphold it as a valid exercise of Commerce Clause authority.

Indeed, the single post-*Raich* decision Plaintiffs cite that found a federal regulation fell outside the bounds of the Commerce Clause is nonbinding, distinguishable, and inconsistent with the decisions of multiple federal courts of appeals and the highest courts of several states. *Gustafson v. Springfield, Inc.*, 2020 WL 5755493 (Pa. App. Sept. 28, 2020)—an intermediate state court decision—held that a federal "tort reform" statute limiting the liability of gun manufacturers fell outside of Congress's authority under the Commerce Clause. *Id.* at *19. The claimed links between the challenged law and interstate commerce were (1) the fact that a firearm used in a tortious act must have been involved in interstate commerce and (2) the economic effects of lawsuits on interstate commerce. *Id.* at *18. In determining that the regulation at issue exceeded the commerce power, the *Gustafson* court noted that the mere fact that a gun involved in an allegedly tortious event had passed through interstate commerce at some point (no matter how remote and no matter whether it involved

6

the parties to the alleged tort) was similar to the link to interstate commerce found insufficient in *Lopez*. *Id.* at *23. It also reasoned that the effects of lawsuits on interstate commerce, without more, lacked a limiting principle, and that such reasoning, if extrapolated broadly, would permit congressional regulation of any activity involving courts. *Id.* at *22.

The Order at issue here is entirely distinguishable. As an initial matter, it regulates only parties already involved in a preexisting commercial relationship. Accordingly, whether it affects interstate commerce does not depend upon a commercial act that the parties affected by the regulation might have had no involvement with. And the Order's substantial effects on interstate commerce do not depend on the economic effects of any lawsuit that might (or might not) be brought by a landlord seeking an eviction. Instead, the Order regulates economic, contractual relationships, and its direct financial impacts on those contractual relationships, when viewed in the aggregate, affect interstate commerce via the larger market for rental housing.

*Gustafson* is not only distinguishable, but also a marked outlier inconsistent with the well-reasoned decisions of multiple federal courts of appeals and state courts of last resort. The Second Circuit, for example, reached the opposite conclusion regarding the same Act, deeming it a constitutional exercise of the commerce power. *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 393–95 (2d Cir. 2008); *see also Ileto v. Glock, Inc.*, 565 F.3d 1126, 1140–41 (9th Cir. 2009) ("We have no trouble concluding that Congress rationally could find that, by insulating the firearms industry from a specified set of lawsuits, interstate and foreign commerce of firearms would be affected."). The highest courts of several states have similarly upheld the statue's constitutionality. *See Adames v. Sheahan*, 909 N.E. 2d 742, 765 (Ill. 2009) (finding the statute "a valid exercise of the federal power to regulate interstate commerce"); *see also District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 172–73 (D.C. 2008) (finding no separation of powers issue). Thus, to the extent this Court looks to any of this nonbinding authority as persuasive, it would be far more advisable to look to the weight of

7

authority expressed in numerous federal and state high-court decisions rather than an outlier intermediate state-court opinion.

Finally, the Order is easily distinguishable from the subject of Chief Justice Roberts's Commerce Clause analysis in *NFIB v. Sebelius*, 567 U.S. 519 (2012).  Although the Chief Justice's opinion was joined by no other Justice, and is not controlling, *see* Defs.' Mem. 26 n.9, it is also unhelpful as persuasive authority here because its Commerce Clause analysis hinged on the fact that, in the Chief Justice's view, the Affordable Care Act's individual mandate did not "regulate" existing commerce, but rather "force[d] individuals into commerce precisely because they elected to refrain from commercial activity."  *NFIB*, 567 U.S. at 558.  Here, by contrast, it is uncontested that the Order regulates preexisting landlord-tenant relationships.  The Chief Justice's reasoning as to why the individual mandate was not a valid exercise of the commerce power thus has no application here.

In sum, Defendants have cited multiple analogous, controlling cases that demonstrate that the Order falls within the Commerce Clause authority.  Plaintiffs point to none.  If the Court exercises its discretion to issue a declaratory judgment, it should be in Defendants' favor.

**B. Alternatively, the Order Is a "Necessary" and "Proper" Means of Achieving a Legitimate End under the Commerce Power.**

Notwithstanding the clear holdings of *Russell* and *Groome* that regulation of the economic relationship between landlords and tenants is permissible under the Commerce Clause, Plaintiffs argue that the Court must apply not only the four *Lopez/Morrison* factors, but also inquire whether the action is "proper" under the Necessary and Proper Clause.  *See* Pls.' Reply 3–5 (citing *Raich*, 545 U.S. at 33–42 (Scalia, J., concurring)).  This additional layer of analysis is unnecessary, as the Commerce Clause alone authorizes the Order.  *See supra* pp. 3–8; *see also* Defs.' Mem. 15 & n.4, 26–27.  But even if analyzed under the Necessary and Proper Clause, the Order easily survives.

In determining whether the Necessary and Proper Clause authorizes a federal regulation, courts look to whether the regulation "constitutes a means that is rationally related to the

8

implementation of a constitutionally enumerated power." *United States v. Comstock*, 560 U.S. 126, 134 (2010). For example, in a case cited by Plaintiffs, the Fifth Circuit upheld a federal requirement that sex offenders keep their registration current when moving intrastate, finding that the Necessary and Proper Clause gives Congress the authority to regulate this entirely local, noneconomic activity in "the attainment of a legitimate end under the commerce power." *United States v. Whaley*, 577 F.3d 254, 259–61 (5th Cir. 2009) (quoting *Raich*, 545 U.S. at 35–37 (Scalia, J., concurring)).

As explained in Defendants' opposition, because the Order operates on economic activity that the Supreme Court and Fifth Circuit have held is properly regulable under the Commerce Clause, it presents a straightforward exercise of Commerce Clause authority that does not require the necessary-and-proper analysis applied in *Whaley*. *See* Defs.' Mem. 18, 22–23. But even assuming the Order did not regulate economic activity, it achieves what both the Supreme Court and this Circuit have held is a legitimate end under the commerce power: regulation of the rental housing market. Accordingly, the Order has a rational relationship to the commerce power and would be authorized under the Necessary and Proper Clause.

Further, the Supreme Court has recognized that a history of federal involvement in the regulated area may inform "the reasonableness of the relation" between a new regulation and "pre-existing federal interests" in the Necessary and Proper Clause context. *Comstock*, 560 U.S. at 137. Defendants have shown that courts have long upheld federal regulation of the market for residential rental properties under the Commerce Clause, most notably in the Fair Housing Act and its amendments. *See* Defs.' Mem. 17–18; *see also Woods-Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982) (finding that threat of racially motivated eviction violated Fair Housing Act and 42 U.S.C. § 1982). But even if the activity regulated is defined narrowly as evictions, there is still an established record of federal involvement. The most recent and comparable example is the eviction protection included in the CARES Act. Pub. L. No. 116-136, § 4024, 134 Stat. 281 (Mar. 27, 2020). But the

9

federal government has provided temporary protection from eviction for members of the armed forces since at least World War II. *See* Soldiers' and Sailors' Civil Relief Act of 1940 (SSCRA), Pub. L. No. 76-861, 54 Stat. 1178 (1940) (codified as amended at 50 U.S.C. § 3951(b)(1)).[4] Plaintiffs are thus incorrect that the Order represents "an unprecedented expansion of federal authority into the traditional police power of the states." Pls.' Reply 10.

Instead, the entire premise of Plaintiffs' argument is faulty, as it ignores the constitutional principle of the supremacy of federal law. The Supremacy Clause states that federal law "shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, "[a]s long as it is acting within the powers granted it under the Constitution, Congress may impose its will on the States," including by "legislat[ing] in areas traditionally regulated by the States." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Plaintiffs seek to turn this doctrine on its head, arguing that even if the Order is within the federal government's constitutional powers—or, as they put it, "necessary"—the Court should nonetheless declare it unconstitutional—or not "proper"—because it touches upon "matters of traditional state concern." Pls.' Mem. 23–24. That is simply not the law. Nor are Plaintiffs correct that Chief Justice Roberts's *NFIB* opinion supports such an inverted reading of the Constitution. Instead, the Chief Justice's Necessary and Proper Clause analysis represents an extension of his Commerce Clause opinion, positing that federal regulation should "be limited to regulating under the Commerce Clause those who by some preexisting activity bring themselves within the sphere of federal regulation." *NFIB*, 567 U.S. at 560. That preexisting activity exists here, making Plaintiffs' invocation of *NFIB* off base.

---

[4] Although several courts have found the SSCRA a valid exercise of Congress's war powers, *see, e.g.*, *United States v. Alberts*, 59 F. Supp. 298, 299 (E.D. Wash. 1945), the law nevertheless demonstrates a history of federal regulation of residential evictions, *see Comstock*, 560 U.S. at 138 (looking to analogous statutes not presenting the issue at hand in reviewing history of federal regulation).

For all of these reasons, should the Court exercise its discretion to issue a declaratory judgment at this time, it should find the Order a valid exercise of the federal government's enumerated powers.

## II. The Order Precludes Evictions for Nonpayment of Rent.

Finally, Defendants would like to further address a question the Court raised during oral argument that bears upon Plaintiffs' standing. The Court inquired whether, even if a tenant were a "covered person" subject to the Order's protections, a landlord could nonetheless evict him pursuant to the Order's exception for evictions based on criminal activity if, due to nonpayment of rent, the tenant could be considered to have committed the offense of criminal trespass under Texas Penal Code § 30.05(a) by remaining in his residence. *See* Hr'g Tr. 15:13–22, 22:12–23:12. The government's position is that carrying out an eviction under such circumstances would be impermissible while the Order is in effect.

Although it is true that the Order does not preclude evictions based on a tenant "[e]ngaging in criminal activity while on the premises," it also makes plain that it prohibits evictions of covered persons where the only basis is failure to fulfill an obligation regarding "the timely payment of rent or similar housing related payment." Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55292, 55294 (Sept. 4, 2020). The effectiveness of the Order would thus be greatly diminished, at the risk of the exception swallowing the rule, were remaining in one's residence despite nonpayment of rent considered criminal activity. Given that the stated intent of the Order is "mitigating the spread of COVID-19," a construction that would result in substantially more evictions, thus increasing the risk of disease transmission as otherwise covered persons move into congregate settings or experience homelessness, would be contrary to its purpose. *Id.* at 55293 ("The Order shall be interpreted and implemented in a manner as to achieve the following objectives: [m]itigating the spread of COVID-19 within congregate or shared living settings, or through homeless shelters . . . ."). To the extent this reading conflicts with state law, that contrary law would be

11

preempted. *See* 42 U.S.C. § 264(e) (regulations issued under 42 U.S.C. § 264—such as the Order— preempt state law "to the extent that such a provision conflicts with an exercise of Federal authority").

But it is not apparent that any conflict exists here, as it is unclear whether remaining in one's residence despite not having paid rent in full, without more, could actually constitute criminal trespass under Texas law while the Order remains in place. The elements of that crime are: "(1) a person (2) without effective consent (3) enters or remains on the property or in a building of another (4) knowingly or intentionally or recklessly (5) when he had notice that the entry was forbidden or received notice to depart but failed to do so." *United States v. Bailey*, 111 F.3d 1229, 1238 (5th Cir. 1997) (citing *Daniels v. State*, 633 S.W. 2d 899, 901 (Tex. Crim. App. 1982)). Given that the Order informs covered persons that "[u]nless the CDC order is extended, changed, or ended, the order prevents you from being evicted or removed from where you are living through December 31, 2020," at least the mens rea element of the crime would appear difficult to prove during the Order's pendency. *See* 85 Fed. Reg. at 55297. It is also not obvious that a landlord could withhold "effective consent" for a covered person to remain in his residence despite nonpayment of rent or provide an enforceable "notice to depart" while the Order remains in effect. *See Anthony v. State*, 209 S.W. 3d 296, 310 (Tex. Crim. App. 2006) (finding "effective consent" lacking where property owner "lacked authority to exclude a person"). Defendants are not aware of any court having actually considered the interplay between section 30.05(a) and the Order, nor do Defendants purport to provide a definitive interpretation of Texas criminal law here. But the issue appears at least ambiguous, and given the clear intent of the Order to preclude evictions based on nonpayment of rent, the Court should not read the Order as permitting a broadly construed state criminal trespass statute to create an end-run around it.

This does not mean that Defendants concede that Plaintiffs have standing to sue. *See* Defs.' Mem. 29 n.10. But it is Defendants' position that the criminal activity exception to the Order does

12

not permit Plaintiffs here to evict their tenants who qualify for protection as covered persons for the sole reason that those persons remained in their residences despite nonpayment of rent during the pendency of the Order.

## CONCLUSION

The Court should deny the pending motion for preliminary injunction rather than rule upon Plaintiffs' request for declaratory judgment. Should the Court choose to exercise its discretion and issue a declaratory judgment, however, the Court should declare that the Order is a constitutional exercise of federal authority.

Dated:  December 4, 2020                                  Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ERIC BECKENHAUER
Assistant Director, Federal Programs Branch

*/s/ Leslie Cooper Vigen*
LESLIE COOPER VIGEN
Trial Attorney (DC Bar No. 1019782)
STEVEN A. MYERS
Senior Trial Counsel (NY Bar No. 4823043)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel:  (202) 305-0727
Fax:  (202) 616-8470
E-mail:  leslie.vigen@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify I served this document today by filing it using the Court's CM/ECF system, which will automatically notify all counsel of record.

Dated:  December 4, 2020

                                                    */s/ Leslie Cooper Vigen*
                                                    Trial Attorney